UNITED STATES of America, Plaintiff–Appellee,

v.

James Allen RATCHFORD, Defendant–Appellant.

No. 90–6343.

United States Court of Appeals, Tenth Circuit.

Aug. 12, 1991.

Jay F. McCown, Oklahoma City, Okl., for defendant-appellant.

Vicki Zemp Behenna, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with her on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY and LOGAN, Circuit Judges, and BRIMMER, Chief District Judge.*

LOGAN, Circuit Judge.

Defendant James Allen Ratchford was convicted following a jury trial of nine counts of bank fraud and two counts of misapplication of funds, in violation of 18

U.S.C. §§ 1344(1) and 657. The nine counts of bank fraud were in connection with an alleged check kiting scheme and the two counts of misapplication of funds were for an alleged diversion to personal use of moneys belonging to a savings and loan association. He now appeals, arguing that (1) there was insufficient evidence to support his convictions on the first three bank fraud counts and the two misapplication of funds counts; (2) reversal is required because the prosecutor made prejudicial misstatements in her closing remarks; and (3) the court failed to properly instruct the jury on defendant's good faith defense on counts four through nine.

## I

Defendant first contends that the government presented insufficient evidence to convict him on the first three bank fraud counts of the indictment. Specifically, defendant argues that his bank accounts, when combined, contained sufficient funds on April 6, 1987, to cover the three checks that formed the basis of counts one, two, and three.

"Evidence is considered sufficient to support a criminal conviction if, when viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Culpepper*, 834 F.2d 879, 881 (10th Cir.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Applying this standard to the instant case, we find sufficient evidence in the record to support defendant's convictions.

Defendant, an accountant and businessman, formed Home Management, Inc. and three related companies in 1980: HMI Property Management, Inc., HMI Realty, Inc., and HMI Construction Company. The indictment charged that in January 1987, defendant began kiting checks at three different banks utilizing the accounts of his companies, his personal account, and an account labeled HMI Investors Trust Ac-

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

count; that defendant's activities continued until April 1987, ultimately causing a loss to two of the banks of nearly $50,000. Count one charged defendant with writing a check in the amount of $4,300 on January 21, 1987, count two a check of $4,500 on February 9, 1987, and count three a check of $4,900 on March 20, 1987, while "knowing or having reason to know that the funds in [the respective accounts] were not sufficient to pay such ... check[s]," in violation of 18 U.S.C. § 1344(1). Indictment, I R. tab 5/9/90, at 3, 4.

The government's evidence at trial showed that on the dates the checks charged in counts one through three were written, there were insufficient funds in the respective accounts to cover the checks. The evidence also shows that the covering deposits for these checks were in the form of checks written on either the account to which the original indicted check was deposited or an account of one of defendant's other companies involved in the float scheme. The only argument defendant makes is that the existence of sufficient funds on April 6, 1987, negates a finding of guilt because in a true check kiting scheme, there is never a positive balance of funds exclusive of inter-account transfers. We disagree. The insufficient fund checks charged in counts one, two, and three were written on January 21, February 9, and March 20, 1987, respectively. For purposes of § 1344(1), the relevant inquiry is whether defendant knowingly had insufficient funds in the accounts being utilized on the date the checks were written. The amount contained in those accounts on April 6 is irrelevant to this determination.

Based on the evidence, we hold that a jury could find beyond a reasonable doubt that defendant "knowingly execute[d] ... a scheme or artifice to defraud a financial institution." 18 U.S.C. § 1344(1).

## II

■ Defendant's misapplication of funds conviction stemmed from his activities as head of HMI Property Management, Inc. (HMI Property). HMI Property acted as property manager for Valley Forge, an apartment complex owned by two Oklahoma savings and loan institutions. In the spring of 1987, the apartment complex sustained hail damage which resulted in a cash settlement from the insurance company. Defendant diverted $8,800 of this settlement to his personal account, using the money to pay his charge card debt. HMI Property never repaired the damage to the complex.

Defendant argues that the evidence was insufficient to convict him of misapplication of funds under the language of 18 U.S.C. § 657. Specifically, defendant contends that at the time he procured the funds from the insurance settlement, he was not "connected" with a federally insured institution as required by § 657. Defendant argues that his only connection was with First Capital Mortgage, the loan servicer for the two savings and loans, and that this contact is too remote for purposes of § 657. We disagree.

Section 657 imposes criminal liability on any "officer, agent or employee of or connected in *any capacity* with" a savings and loan who embezzles or willfully misapplies any money or funds belonging to such institution. 18 U.S.C. § 657 (emphasis added). In the instant case defendant was connected to a savings and loan through his association with First Capital, who employed his company to manage an apartment complex owned by two Oklahoma savings and loans.[1] As president and owner of the managing company, defendant was aware of the savings and loans' ownership of the complex and that his ultimate responsibility was to these owners. It was in this position of trust that he diverted funds he knew belonged to these institutions to his own personal use. The check defendant diverted in part to pay his personal charge card debt was made out to "OK Federal S & L DBA Valley Forge Apts C/O Jim Gladney, Home Mgmt Inc." Adden-

---

1. First Capital, as loan servicer, was responsible for taking in principal and interest payments and disbursing them to the mortgage holders of the property. A loan servicer performs this task in the same manner as would a savings and loan. IV R. at 289.

dum Exhibits of Appellee's Brief at 77 (ex. 65). Jim Gladney signed the check for Home Management, Inc. and turned it over to defendant. III R. at 257.

Although each case is fact specific, the courts have given a broad interpretation of § 657 to effectuate congressional intent to protect federally insured lenders from fraud. *See United States v. Prater*, 805 F.2d 1441, 1446 (11th Cir.1986). " 'In cases where the defendant is not directly employed by the insured bank, courts have focused on the relationship between the employing entity and the bank's business in deciding whether there is a sufficient "connection" for purposes of the statute.' " *Id.* (quoting *United States v. Fulton*, 640 F.2d 1104, 1106 (9th Cir.1981)). *See also United States v. Harris*, 729 F.2d 441, 445 (7th Cir.1984) (employees of state agency receiving 60% of operating funds from HUD, working on 100% HUD funded project, are "connected" to HUD sufficiently to support conviction under § 657). Given the facts of the instant case and the broad interpretation normally afforded § 657, we conclude that defendant was sufficiently connected with an insured savings and loan association to support his convictions for misapplication of funds belonging to it.

### III

■ Defendant next argues that the prosecutor made prejudicial misstatements concerning the law and evidence during her closing argument. In his brief, defendant identifies four false and misleading remarks by the prosecutor that, even though he failed to object, require reversal of his conviction under the plain error rule.

In cases involving a failure to object, Rule 52(b) of the Federal Rules of Criminal Procedure authorizes a court to review the evidence or statement for plain error. The plain error doctrine of Rule 52(b) "tempers the blow of a rigid application of the contemporaneous-objection requirement." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). "The Rule authorizes the Courts of Appeals to correct only 'particularly egregious errors,' those errors that 'seriously affect the fair-ness, integrity or public reputation of judicial proceedings.' " *Id.* (citations omitted). Rule 52 should be " 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).

Defendant points to the following four statements and corresponding evidence in support of his arguments:

First misstatement of the evidence:

"There are some other facts in this case that are undisputed and that is that the defendant overdrafted his account and he knew the account was overdrafted and he went to Mustang Bank to try to get a loan to cover the overdraft situation."

V R. at 599.

Corresponding Evidence:

"Q [by prosecutor]: The money [from the loan] was to cover overdrafts, wasn't it Mr. Ratchford?

A: Not at the time we applied. Not at the time that we had our first meeting and I—or I thought that the loan had been approved. We issued checks only in the belief that we would have the loan and would have the funds coming in and our issuing checks on that belief is what created the overdraft."

*Id.* at 526.

Second misstatement of the evidence:

"[Defendant] was trained in school at OSU to identify a check kite. He was trained as an auditor for Pete Marwick [sic] to know what check kiting was."

*Id.* at 605.

Corresponding Evidence:

"Q [by Prosecutor]: And you know what check kiting is?

A [by Defendant]: I have a general idea.

Q: Were you not taught that in school?

A: Not to my recollection.

Q: Were you not taught that as an auditor at Pete Marwick [sic]?

A: Not specifically.

Q: Was it not one of your jobs to identify kiting procedures in ... your customers accounts?

A: No, ma'am."

*Id.* at 519.

Third misstatement of the evidence:

"Does he ever address to you, does he ever explain to you once what that money [from the insurance settlement] was used for, why he felt he was entitled to that money? He doesn't because there is no explanation for it."

*Id.* at 621.

Corresponding Evidence:

Several times during trial, defendant testified that he was entitled to the money pursuant to his property ownership. IV R. 352, 447, 459, 460; V R. 574–75.

Misstatement of the law:

"Ladies and gentlemen, in order for you to find the defendant not guilty in this case, you're going to have to disbelieve the testimony of three bank officers, two FBI agents, two employees and a vice president of a savings and loan, OK Federal Savings & Loan. I submit to you, ladies and gentlemen, that those individuals were not mistaken about what occurred. They were not mistaken about their recollections and their conversations with the defendant. They have absolutely no reason to come to you during the course of this trial and tell you anything but the truth."

V R. at 606–07.

Corresponding Law:

"[E]ven assuming the testimony of the Prosecution and Defense witnesses contained unavoidable contradiction, it of course does not follow as a matter of law that in order to acquit [the defendant] the jury had to believe the agents had lied.... [T]o tell the jurors that they had to choose between the two stories was error."

*United States v. Vargas,* 583 F.2d 380, 387 (7th Cir.1978).

We are satisfied that these statements of the prosecutor did not rise to the level of plain error. The prosecutor's comments on defendant's loan application and knowledge of check kiting were within the range of reasonable inferences that could be drawn from the evidence. *See United States v. Manriquez Arbizo,* 833 F.2d 244, 247 (10th Cir.1987). The record shows that defendant's account was overdrafted when he applied for the loan and that accountants of similar background and training were instructed on the nuances of check kiting. We also see nothing misleading about the prosecutor's statements on defendant's use of the insurance settlement. Finally, although it may have been error for the prosecutor to tell the jury members that they had to disbelieve several witnesses before they could acquit defendant, *see United States v. Vargas,* 583 F.2d 380, 387 (7th Cir.1978), this comment was not so prejudicial as to require reversal. The record contains substantial evidence apart from this remark to support defendant's convictions. Furthermore, the trial judge instructed the jury that the arguments and statements of counsel are not evidence, that they could reject even uncontradicted testimony, and that they are the sole judges of the facts.

### IV

■ Finally, defendant argues that the district court did not properly instruct the jury on his good faith defense to the bank fraud charges. He contends that the court should have included in its instruction the following statement: "Defendant's belief that he was acting in good faith need not be rational nor reasonable if Defendant's beliefs were truly held." Appellant's Brief at 12.[2]

2. The district court instructed the jury as follows:

"The defendant states that he acted in good faith and that he did not intend to defraud any of the financial institutions in question, or anyone else. Good faith is a complete defense to the charges in the indictment, since good faith on the part of the defendant is inconsistent with intent to defraud or willfulness which is an essential part of the charges. The burden of proof is not on the defendant to prove his good faith, of course, since he has no burden to prove anything. The government must establish beyond a reasonable

A defendant is entitled to an instruction on a theory of defense if it is legally sound and supported by the evidence presented at trial. A trial judge, however, "is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." *United States v. Pack,* 773 F.2d 261, 267 (10th Cir.1985) (citation omitted). Applying this standard to the instant case, we are satisfied that the district court did not err in instructing the jury on defendant's good faith defense. Under the court's instruction, the jury was informed that a defendant acting upon an honest opinion or belief is not chargeable with fraudulent intent even if his opinion is erroneous or his belief is mistaken or wrong. This instruction is an adequate statement of the law, *see United States v. Cronic,* 839 F.2d 1401, 1403 (10th Cir.1988); *United States v. Hopkins,* 744 F.2d 716, 717–18 (10th Cir.1984), and sufficiently broad to include even beliefs not rationally or reasonably held.

AFFIRMED.

doubt that the defendant acted with the specific intent to defraud as charged in the indictment.

A defendant who acts upon an opinion honestly held by him at the time of the alleged acts, or pursuant to a belief honestly entertained by him at the time of the alleged acts, is not chargeable with fraudulent intent even though his opinion is erroneous or his belief is mistaken or wrong. Similarly, evidence which establishes only that a person made a mistake in judgment or an error in management or was careless, does not establish fraudulent intent. In order to establish fraudulent intent on the part of a person, it must be established that the person knowingly and intentionally intended to deceive another.

On the other hand, the defendant's good faith must have existed at the time the alleged unlawful acts were committed. One cannot assert good faith as a defense if the opinions or beliefs advanced as justifications for the good faith defense were formulated after the commission of criminal acts.

Good faith does not mean a hope that money obtained pursuant to a scheme to defraud will eventually be put back.

It is for you the jury to determine whether the defendant truly held the beliefs or opinions in question at the time of the alleged acts. Moreover, it will be for you, the jury, to determine from all of the facts and circumstances appearing before you, if the government has established, beyond a reasonable doubt, that the defendant had the requisite state of mind in connection with the alleged offenses."

I R. tab 59, inst. 20–A.