959 F.2d 245
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Doug J. COOK, Defendant-Appellant.
 No. 91-6060.
 United States Court of Appeals, Tenth Circuit.
 March 25, 1992.
 
 ORDER AND JUDGMENT**
 Before STEPHEN H. ANDERSON, ALDISERT,* and TACHA, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant Doug J. Cook appeals his conviction for concealing stolen goods that had crossed state lines in violation of 18 U.S.C. § 2315. On appeal, defendant contends that the district court erred by admitting statements he allegedly made during a Federal Bureau of Investigation (FBI) interrogation and by admitting hearsay statements of an alleged coconspirator without determining admissibility under Fed.R.Evid. 801(d)(2)(E). He also contends that evidence was insufficient to support the jury's guilty verdict. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 
 3
 The government introduced evidence at trial indicating that the following events occurred. Defendant was acquainted with Thomas Baldwin and George Grace, who were cousins residing in Kentucky. Grace called Baldwin and asked him to steal a tractor-truck. Baldwin stole an eighteen-wheel truck with a custom sleeper from Parkway Ford in Madisonville, Kentucky. Grace informed Baldwin that he had located a buyer for the truck and instructed Baldwin to drive toward Oklahoma. Grace met Baldwin in Missouri and told him that defendant, an Oklahoma resident, would accept the stolen truck as a down payment for the purchase of defendant's truck. Grace and Baldwin travelled to defendant's house in Oklahoma, where defendant informed them that he did not want to sell his own truck but had arranged for the truck to be sold for $6,000. Baldwin explained to defendant how he had stolen the truck.
 
 
 4
 Defendant had previously spoken with a truck driver, Dale Miller, who also lived in Oklahoma. Miller's truck had broken down, and he asked defendant to keep his eye out for parts to fix the truck. Defendant later allegedly informed Miller that he had found something "that might be a good deal for both of us." He also allegedly told Miller that "he found something that was coming from over east" that would help Miller fix his broken truck.
 
 
 5
 After defendant told Grace and Baldwin they would receive $6,000 for the stolen truck, he made a telephone call. After the call, defendant informed Grace and Baldwin that the buyer did not have $6,000 in cash, but would pay $7,000 within a week or two. Defendant then instructed Grace and Baldwin to deliver the stolen truck to the buyer's barn. Grace and Baldwin took the truck to the barn as instructed. Baldwin identified a photograph of Miller's barn as the place where he and Grace left the truck.
 
 
 6
 After Miller found the truck at his barn, defendant called him and told him to remove the wheels, tires, and sleeper unit from the truck. Defendant went to Miller's barn and, together, defendant and Miller loaded these items in defendant's pickup truck. Then, in defendant's presence, Miller removed other parts from the truck to be used on Miller's truck. When defendant asked about the vehicle identification number, Miller told him he had removed it. Miller later burned the remaining parts of the truck in a trash pit behind his house. Also at a later time, Miller gave defendant $6,000 to give to Grace and Baldwin as payment for the truck. Defendant gave this money to a friend of Grace's who had come to Oklahoma.
 
 
 7
 Baldwin and Grace were later arrested for theft of the truck. The FBI executed a search warrant for Miller's property, found the truck parts Miller had buried, and interviewed Miller. Miller gave Agent Larry Damron a metal plate identifying the truck's identification number, model number and serial number. Initially, Miller denied defendant's involvement, but later explained defendant's role in Miller's receipt of the truck. Miller told an FBI agent that defendant was the only person he had spoken to regarding the stolen truck.
 
 
 8
 Agent Damron and another agent then questioned defendant at his trailer home. Initially, defendant denied his involvement. At trial, Damron testified that after defendant learned that others had implicated him in the theft, defendant admitted that he had assisted in obtaining the truck for Miller. Damron testified that defendant then explained that Miller had needed parts and that he had spoken by telephone to Grace regarding the stolen truck. Damron also testified that defendant admitted picking up the tires, wheels and sleeper unit and that he knew he had violated the law. The agents did not tape record the conversation with defendant.
 
 
 9
 Defendant's first contention on appeal is that the district court erred in admitting testimony regarding statements he allegedly made without first establishing that he had voluntarily waived his privilege against self-incrimination. See Miranda v. Arizona, 384 U.S. 436 (1966). Defendant raises this issue for the first time on appeal. He failed to move to suppress this evidence prior to trial, and he did not object to Agent Damron's testimony at trial. In United States v. Hart, 729 F.2d 662, 665 (10th Cir.1984), cert. denied, 469 U.S. 1161 (1985), we held that "where no objection on Miranda grounds was made to the use of the confession throughout the trial court proceedings, ... the objection [is] waived." We also held that the trial court has no obligation sua sponte to hold a voluntariness hearing when the defense fails to challenge the admission of a confession. Id. at 666. Because defendant failed to raise this issue prior to or during trial, he waived the objection.
 
 
 10
 Defendant next contends that the district court erred by admitting hearsay testimony elicited from witness Dale Miller. Specifically, he argues that the court failed to find that defendant and Miller were coconspirators before admitting the hearsay testimony. We review the district court's determination whether to admit evidence, including coconspirator hearsay statements, under an abuse of discretion standard. United States v. Cooper, 733 F.2d 1360, 1366 (10th Cir.), cert. denied, 467 U.S. 1255 (1984).
 
 
 11
 In his appellate brief, defendant does not specify which of Miller's statements he considers to be hearsay, nor does he show where defense counsel contemporaneously objected to the admission of these statements at trial. Therefore, it is very difficult to review his contention. When the defense fails to object contemporaneously to admission of hearsay, the objection is waived and we review only for plain error. United States v. Bowser, 941 F.2d 1019 (10th Cir.1991). Because we find no plain error, we hold that defendant's hearsay objections are waived to the extent he failed to object to any hearsay that might have been admitted at trial. In addition, even if some of Miller's statements constituted coconspirator hearsay, we hold that the district court properly made an adequate finding, as required under Bourjaily v. United States, 483 U.S. 171 (1987), and United States v. Radeker, 664 F.2d 242, 243 (10th Cir.1981), that a coconspirator relationship existed between the defendant and the trial witness. Therefore, we hold that defendant's contention is without merit.
 
 
 12
 Finally, defendant contends that evidence was insufficient to support the jury's guilty verdict. " 'Evidence is considered sufficient to support a criminal conviction if, when viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.' " United States v. Ratchford, 942 F.2d 702, 703 (10th Cir.1991) (quoting United States v. Culpepper, 834 F.2d 879, 881 (10th Cir.1987)), cert. denied, 60 U.S.L.W. 3544 (U.S. Feb. 24, 1992).
 
 
 13
 In his appellate brief, defendant lists the elements that must be proven to convict a person of a conspiracy to commit a crime against the United States, 18 U.S.C. § 371--presumably to argue that the government failed to prove these elements. Because the jury returned a verdict of not guilty on Count I (alleging a violation of § 371), we need not review sufficiency of evidence on County I.
 
 
 14
 Defendant also asserts that because the jury acquitted defendant on Count I, the jury must have chosen not to rely on the testimony of witness Timothy Baldwin. Defendant then argues that because the jury discounted Baldwin's testimony, we--in reviewing whether evidence was sufficient for the conviction on Count II--should disregard Baldwin's testimony related to Count II as evidence that supports the guilty verdict on that count. Defendant misunderstands our role in reviewing a jury's verdict. We do not conjecture why the jury chose to acquit defendant on Count I. Nor do we pick and choose what evidence the jury might have relied on to convict defendant on Count II; instead, we review all evidence in the light most favorable to the government. Having done so, we conclude that a reasonable jury could have found beyond a reasonable doubt that the defendant was guilty of violating 18 U.S.C. § 2315.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The Honorable Ruggeror J. Aldisert, Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3