# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                      Elisabeth A. Shumaker
Clerk                                                        Chief Deputy Clerk

November 19, 1996


**TO:**   All recipients of the captioned opinions

**RE:**   96-3043 U.S. v. Scroger; 96-3082 U.S. v. Taylor
October 28, 1996; October 8, 1996


Please be advised of the following correction to the captioned decisions:

The references to Assistant United States Attorney Robin D. Fowler as "her" should be to "him."  Please make the appropriate corrections.



Very truly yours,

Patrick Fisher, Clerk



Susan Tidwell
Deputy Clerk

**UNITED STATES COURT OF APPEALS**

**Filed 10/8/96**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
)
v. )     No. 96-3082
)
TERRY D. TAYLOR, )
)
    Defendant-Appellant. )

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-CR-20060-2)

_____

Robin D. Fowler, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the brief), Kansas City, Kansas, for appellee.

David Phillips (Michael L. Harris, Assistant Federal Public Defender, with him on the brief), Kansas City, Kansas, for appellant.

_____

Before **MURPHY, RONEY,\* and BARRETT,** Circuit Judges.

_____

**BARRETT**, Senior Circuit Judge.

_____

\* The Honorable Paul H. Roney, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

_____

Terry D. Taylor (Taylor) appeals from his conviction and sentence entered following his plea of guilty to knowingly maintaining a place for the manufacture of methamphetamine, in violation of 21 U.S.C. § 856(a)(1).

Facts

On March 7, 1995, police responded to 10525½ State Avenue in Kansas City, Kansas, in search of stolen property. During a consensual search of the trailer leased by Taylor and the surrounding property, police saw what appeared to be a small methamphetamine "cook" in progress. When police asked Taylor about their observation, Taylor told them to end the search unless they had a warrant. The police returned with a warrant, conducted a thorough search of the trailer, and found a small methamphetamine lab in production and several weapons. In addition, Taylor's fingerprints were found on a beaker containing a small quantity of methamphetamine. According to a Drug Enforcement Administration chemist and as agreed to by both Taylor and the government, the lab was capable of producing 40 grams of d-methamphetamine.[1]

On July 19, 1995, officers went to 4826 Parkview in Kansas City, Kansas, to conduct a "knock and talk" in response to reports of drug activity. As the officers approached the house, they heard noises coming from inside that sounded like someone was running through the house and heard someone say, "go out the back." When Jimmy E. Scroger (Scroger)

---

[1]     Although the lab was capable of producing between 40 and 60 grams of d-methamphetamine, it was agreed by both parties that the lower quantity would be used because the police did not weigh some of the liquids involved.

opened the front door, he was holding a hotplate in his hands, his fingertips were stained with rust-colored residue, and there was a strong odor emanating from the residence that was known to the officers to be associated with methamphetamine manufacturing. The officers also saw glassware commonly used in the manufacturing of methamphetamine inside the house. These observations convinced the officers that the house contained a methamphetamine laboratory. Scroger was taken into custody. During a protective sweep of the residence, Taylor was found hiding in the back yard behind a shed. After a search warrant was obtained, a full search of the residence revealed enough chemicals, in various stages of production, to produce 100 grams of methamphetamine.

On August 23, 1995, Taylor and Scroger were charged in a seven count indictment with various drug offenses relating to the March 7, 1995, and the July 19, 1995, incidents. In Counts II, III, and IV, Taylor was charged individually with various methamphetamine offenses relating to the search of his residence at 10525½ State Avenue on March 7, 1995. In Counts V and VI, he and co-defendant Scroger were charged with conspiracy to manufacture and attempt to manufacture methamphetamine. On October 23, 1995, Taylor pled guilty to Count IV, knowingly maintaining a place for the manufacture of methamphetamine on or about March 7, 1995, in violation of 21 U.S.C. § 856(a)(1).

Taylor's presentence report recommended that his base offense level be calculated based on the production capability of both methamphetamine laboratories: 40 gram from the March 7, 1995, search of his residence at 10525½ State Avenue and 100 grams from the July

19, 1995, search of Scroger's residence at 4826 Parkview Avenue. Taylor objected to the inclusion of the 100 grams attributable to the July 19, 1995, search at Scroger's residence arguing that he had arrived at the address just prior to the arrival of the officers and was not involved in the manufacturing process.

At sentencing, the district court found that "more likely than not by a preponderance of the evidence, Mr. Taylor was involved in the meth manufacturing process at the Scroger residence." (R.,, Vol. V at 22). The court reasoned that "even if the offenses at the Taylor home and at the Scroger home were not part of a common scheme or plan, that they still qualified as part of the same course of conduct and they were sufficiently related that the Court would find by a preponderance of the evidence that they are part of the same series of offenses." Id. at 24. Therefore, the court sentenced Taylor based on relevant conduct of 140 grams of d-methamphetamine which equates to a base offense level of 26. See U.S.S.G. § 2D1.1. The court then enhanced his base offense level two points for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) and reduced his base offense level three points for acceptance of responsibility under U.S.S.G. § 3E1.1(a), resulting in a total offense level of 25 and a sentencing range of 57 to 71 months imprisonment. Taylor was sentenced to 57 months imprisonment.

## Discussion

On appeal, Taylor contends that the district court erred in including the 100 grams of methamphetamine attributable to the July 19, 1995, search of Scroger's residence in his

- 4 -

relevant conduct for the purpose of calculating his base offense level. We review the factual findings supporting the district court's base offense level calculations under the clearly erroneous standard. United States v. Wise, 990 F.2d 1545, 1550 (10th Cir. 1992). However, we review the district court interpretation of the sentencing guidelines de novo. United States v. Lambert, 995 F.2d 1006, 1008 (10th Cir.), cert. denied, 510 U.S. 926 (1993).

In his argument, Taylor recognizes that drug quantities other than those within the count of conviction may be used to determine a base offense level under U.S.S.G. § 2D1.1. However, he points out that the sentencing court must determine that the particular defendant is responsible for the additional quantities under U.S.S.G. § 1B1.3(a).

The government responds that the district court did not err in determining that the drug quantities found at 4826 Parkview on July 19, 1995, could be used in calculating Taylor's offense level because the facts show by a preponderance of the evidence that Taylor and Scroger were jointly aiding and abetting each other in the manufacture of methamphetamine; they knew each other; and Taylor had recently been engaged in the manufacture of methamphetamine at his house.

Taylor pled guilty to Count IV, knowingly maintaining a place for the manufacture of methamphetamine. Under U.S.S.G. § 2D1.8(a)(1), the base offense level for this drug offense is predicated on the offense level applicable to the underlying controlled substance offense under § 2D1.1. Section 2D1.1(a)(3) sets the base offense level predicated on the quantity of the controlled substance involved. In calculating the quantity of drugs involved,

the guidelines indicate that the sentencing court should include all relevant quantities of drugs, including "quantities of drugs not specified in the count of conviction." U.S.S.G. § 2D1.1, comment. (n.12) ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct)"). See also United States v. Rios, 22 F.3d 1024, 1027 (10th Cir. 1994).

Under § 1B1.3(a), the test for relevant conduct includes:

(1)   (A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B)   in the case of a jointly undertaken criminal activity . . ., all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)   solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivision (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

U.S.S.G. §§ 1B1.3(a)(1) and (2).

Here, the disputed quantity of methamphetamine is the 100 grams attributable to the July 19, 1995, search of Scroger's residence. However, the offense of conviction occurred on March 7, 1995. Under the plain language of § 1B1.3(a)(1), the methamphetamine found

- 6 -

on July 19, 1995, cannot be relevant conduct under § 1B1.3(a), which requires that the act or omissions occur during, in preparation for, or in an attempt to avoid detection or responsibility for the offense of conviction. Thus, we must determine whether the 100 grams of methamphetamine attributable to July 19, 1995, constitute "relevant conduct" for purposes of Taylor's sentencing under § 1B1.3(a)(2).

In order for an offense to be included within the scope of § 1B1.3(a)(2), three prerequisites must be met. First, there must be a finding that the offense in question involved conduct described in §§ 1B1.3(a)(1)(A) and (B). Second, the offense must be the type of offense that, if the defendant had been convicted of both offenses, would require grouping with the offense of conviction for sentencing purposes under U.S.S.G. § 3D1.2(d). Third, the offense must have been "part of the same course of conduct or common scheme or plan." U.S.S.G. § 1B1.3(a)(2).

### A. Conduct Under §§ 1B1.3(a)(1)(A) and (B)

Before we begin our analysis of whether the 100 grams of methamphetamine attributable to the July 19, 1995, search of Scroger's residence may be included in Taylor's relevant conduct, there must be sufficient findings by the district court establishing that Taylor "aided, abetted, counseled, commanded, induced, procured, or willfully caused" the offense in question, see U.S.S.G. § 1B1.3(a)(1)(A), or that the acts or omissions were reasonably foreseeable acts or omissions of others in furtherance of a jointly undertaken criminal activity. See 1B1.3(a)(1)(B).

- 7 -

The district court found that "Taylor was involved in the meth manufacturing process at the Scroger residence." (R., Vol. V at 22). Although the district court's finding does not specifically state how Taylor was "involved" in the dismissed count, we hold that it is sufficient in light of the record as a whole and the inclusive nature of the guidelines. Furthermore, since there is support for this finding in the record, we conclude that the district court did not clearly err.

## B. Grouping Under U.S.S.G. § 3D1.2(d)

As the relevant conduct guideline instructs, we must determine if the dismissed count, either Count V or VI,[2] relating to July 19, 1995, and Count IV, were required to have been grouped together under U.S.S.G. § 3D1.2(d) if Taylor had been convicted of both counts.

The grouping provisions of § 3D1.2 were designed to assist in calculating a single offense level that most accurately reflected the combination of all the counts for which the defendant was convicted. U.S.S.G. Ch. 3, Pt. D, intro. comment. To achieve this result U.S.S.G. § 3D1.2 sets forth the general rule that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Subsections (a) through (d) then define four categories of offenses involving "substantially the same harm" within the meaning of this rule. The only groupable offenses which may qualify for treatment as relevant conduct under § 1B1.3(a)(2) are those defined in subsection (d), which requires

---

[2]    Since both the conspiracy count, Count V, and the attempt to manufacture count, Count VI, named Taylor and the 100 grams of methamphetamine is attributable to either count, it is irrelevant which count we use for purposes of this analysis.

grouping

> [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(d). Subsection (d) also contains a non-exhaustive list of specific offenses which must be grouped under this provision and specific offenses which may not be grouped. See § 3D1.2, comment. (n.6 ¶1) ("The list of instances in which this subsection should be applied is not exhaustive."). Here, the offense of conviction, maintaining a place for the manufacturing of methamphetamine, is not a listed offense. However, the dismissed offenses are both listed offenses which must be grouped under § 3D1.2(d). In addition, § 3D1.2(d) provides that "[f]or multiple counts of offenses that are not listed, grouping under this subsection may or may not be appropriate; a case-by-case determination must be made based upon the facts of the case and the applicable guidelines."

The district court failed to make specific findings relative to this issue. However, we may address it because "we are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir. 1988) (internal quotation omitted).

In determining whether the offense of conviction would be grouped with either of the dismissed counts, we turn to the application notes of § 3D1.2 which provides that "[c]ounts involving offenses to which different offense guidelines apply are grouped together under

subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection."

Based on the guidelines, we hold that the offenses in this case were required to be grouped under § 3D1.2(d). First, we are concerned with offenses to which different guidelines apply: § 2D1.8 controls the offense of conviction, whereas, § 2D1.1 controls the dismissed counts. Second, the offenses involved are all methamphetamine manufacturing offenses which are clearly the "same general type" of offense. See U.S.S.G. § 3D1.2, comment. (n.6 ¶3) ("The 'same general type' of offense is to be construed broadly, and would include, for example, larceny, embezzlement, forgery, and fraud."). Third, the base offense level for each of the offenses is calculated based on the quantity of substance involved under § 2D1.1.

### C. Same Course of Conduct or Common Scheme or Plan

The third requirement in the relevant conduct analysis requires a factual finding that the dismissed counts were either part of the "same course of conduct" or part of a "common scheme or plan" as the offense of conviction. See U.S.S.G. § 1B1.3(a)(2). The district court rejected the contention that these offenses were part of a common scheme or plan. (R., Vol. V at 24). However, the court did find that these offenses were part of the same course of conduct. Id.

In United States v. Roederer, 11 F.3d 973, 978 (10th Cir. 1993), we examined the distinction between "same course of conduct" and "common scheme or plan" and adopted

the distinction drawn by the Second Circuit in <u>United States v. Perdomo</u>, 927 F.2d 111, 115 (2nd Cir. 1991), and held that:

> "same course of conduct" does not require a *connection* between the acts in the form of an overall criminal scheme. Rather, the guideline term contemplates that there be sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct. Thus, "same course of conduct" looks to whether the defendant repeats the same type of criminal activity over time. It does not require that acts be 'connected together' by common participants or by an overall scheme. It focuses instead on whether defendant has engaged in an identifiable 'behavior pattern' of specified criminal activity.

<u>Roederer</u>, 11 F.3d at 978-79 (internal quotations and citations omitted). <u>See</u> U.S.S.G. § 1B1.3, comment. (n.9(B)) ("Offenses . . . qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors . . . to be considered . . . include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.").

The record supports the district court's determination that the offenses were part of the same course of conduct. By pleading guilty to Count IV, Taylor admitted that he maintained a place for the purpose of manufacturing methamphetamine. A review of the dismissed counts establishes the same course of conduct, i.e., methamphetamine manufacturing: Count V charged Taylor with conspiracy to manufacture methamphetamine and Count VI charge him with attempt to manufacture methamphetamine.

Accordingly, we hold that the evidence, when viewed in its entirety, establishes that

Taylor was actively engaged in the same type of criminal activity, methamphetamine manufacturing, on March, 7, 1995, and July, 19, 1995. Taylor's conduct was sufficiently similar and the instances of manufacturing were temporally proximate.

## Conclusion

Based on the foregoing, we hold that the district court properly included the 100 grams of methamphetamine attributable to the July 19, 1995, search of Scroger's residence as relevant conduct in the calculation of Taylor's base offense level.

**AFFIRMED.**