**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 1 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MICHAEL L. LINDSAY,

      Defendant - Appellant.

No. 98-3218

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 97-CR-10158-WEB)**

---

Timothy J. Henry, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the briefs), Wichita, Kansas, for the Defendant - Appellant.

Alan G. Metzger, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the brief), Wichita, Kansas, for the Plaintiff - Appellee.

---

Before **BALDOCK**, **EBEL** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

We must determine whether a district court commits reversible error when it instructs a jury that a defendant's opinion that the tax laws are unconstitutional cannot constitute a "good faith" defense to tax charges. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude it does not, but nevertheless reverse Lindsay's bank fraud convictions because of insufficient evidence. We affirm the sentence imposed below.

## I

Michael L. Lindsay is a tax protester from Kansas. Beginning in 1991, Lindsay ceased to file income tax returns and pay income taxes. In 1992, Lindsay began affirmatively to conceal his income by taking actions such as closing his personal checking account, depositing his earnings in various trust accounts, and destroying his business records. When the Kansas Department of Revenue confronted him with a demand for payment of $138,221.38 in overdue taxes, Lindsay responded by mailing the agency a fraudulent "certified bankers check" in the amount of $276,000. The check was an apparent effort not only to discharge his state tax debt, but also fraudulently to obtain nearly $138,000 from the State. Lindsay also presented worthless certified money orders to Mid-Continent Federal Savings Bank and Central National Bank Marion County.

Lindsay's conduct resulted in indictments charging three counts of tax evasion, 26 U.S.C. § 7201; one count of failure to file a tax return, 26 U.S.C.

§ 7203; two counts of bank fraud, 18 U.S.C. § 1344(1); and one count of mail fraud, 18 U.S.C. § 1341. Lindsay represented himself at trial and was convicted on all counts charged. The district court then sentenced him to twenty-four months in prison.

Lindsay asserts four errors. First, he argues that the district court erred when it instructed the jury that an opinion that the tax laws are unconstitutional cannot constitute a "good faith" defense to a tax charge. Second, he claims that his convictions for bank fraud must be vacated because the government presented insufficient evidence to sustain those convictions. Third, he asserts that the district court erred when it applied a multi-count analysis in determining his sentence. Finally, he argues that the district court erroneously failed to grant him a sentence reduction for acceptance of responsibility.

## II

We first consider Lindsay's argument based on the district court's good faith jury instruction. Because Lindsay failed to raise a timely objection to the jury instruction, we review the instruction only for plain error.[1] See United States v. Sides, 944 F.2d 1554, 1562 (10th Cir. 1991). We apply this standard of review

---

[1] The fact that Lindsay proceeded pro se before the district court does not immunize him from resulting prejudice to his case. The right of self-representation is not a license to violate relevant rules of procedural law. See Faretta v. California, 422 U.S. 806, 834-35 (1975).

with somewhat less rigidity given that Lindsay's claim alleges constitutional error. See United States v. Jefferson, 925 F.2d 1242, 1254 (10th Cir. 1991).

A defendant charged with a specific-intent, federal criminal tax offense can negate the element of wilfulness necessary to prove the violation, thereby providing a defense to the conduct charged, if the defendant establishes that he or she sought in good faith to comply with the relevant law. See Cheek v. United States, 498 U.S. 192, 201 (1991). In the current action the district court instructed the jury that "good faith," which "means, among other things, an honest belief, a lack of malice, and the intent to perform all lawful obligations," is a defense to conduct otherwise punishable under the tax laws, I R. Doc. 40, Instruction No. 30, and that "a person's opinion that the tax laws violate his constitutional rights does not constitute a good faith misunderstanding of the law. Furthermore, a person's disagreement with the government's tax collection system and policies does not constitute a good faith misunderstanding of the law." Id.

Lindsay argues that the referenced instruction conflicts with our decision in United States v. Ratchford, 942 F.2d 702 (10th Cir. 1991). In Ratchford, a bank fraud case, the defendant-appellant challenged the district court's failure to include, in its jury instruction on good faith, language indicating that a "[d]efendant's belief that he was acting in good faith need not be rational nor reasonable if [d]efendant's belief [was] truly held." Id. at 706. We rejected this

- 4 -

argument, concluding the district court's good faith instruction adequately stated the law and was "sufficiently broad to include beliefs not rationally or reasonably held." Id. at 707 (citations omitted). Lindsay apparently incorrectly interprets Ratchford to hold that a good faith belief that is irrationally or unreasonably held can always provide a defense to a charge that requires proof of intent.

The Supreme Court's decision in Cheek, 498 U.S. at 204-07, forecloses Lindsay's interpretation. Cheek, who had been charged with tax fraud and tax evasion, appealed his sentence based on an allegedly erroneous good faith jury instruction. Cheek's determination that the tax laws are unconstitutional, the Court concluded, constituted a "studied conclusion" rather than an innocent mistake of the type encompassed by the good faith defense.[2] Id. at 205. Accordingly, the Court held that

> a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and if they are, an instruction to disregard them would be proper. For this purpose it makes no difference whether the claims of invalidity are frivolous or have substance. It was therefore not error in this case for the District Judge to instruct the jury not to consider Cheek's claims that the tax laws were unconstitutional.

Cheek, 498 U.S. at 206. Cheek compels our conclusion that the district court's

---

[2]The Court also noted a distinction between a good faith, irrationally or unreasonably held belief that a provision of the tax code is inapplicable to oneself, which could constitute a good faith defense by precluding a finding of willfulness, and a studied conclusion, like Lindsay's, that the tax code is unconstitutional, which could not constitute such a defense. Cheek, 498 U.S. at 205-07.

- 5 -

good faith instruction was not plainly erroneous.

## III

Lindsay argues, and the government concedes, that the evidence of his bank fraud convictions is insufficient because the government failed to produce evidence that the financial institutions at issue are insured by the Federal Deposit Insurance Corporation. Such proof is an essential element of bank fraud. See United States v. Rackley, 986 F.2d 1357, 1361 (10th Cir. 1993). The government's concession, our independent review of the record, and the mandate of Rackley, require that Lindsay's bank fraud convictions be reversed.[3]

---

[3]We conclude that despite our decision to reverse Lindsay's bank fraud convictions, the offense level calculated pursuant to U.S.S.G. § 2F1.1(b)(1)(I) for the mail fraud conviction, with which the bank fraud convictions were previously grouped, remains the same. We agree with the government that Lindsay's mail fraud offense caused sufficient loss to render him eligible for the sentence level he received. In sentencing Lindsay, the district court found a total loss of $342,352.02, and enhanced his sentence level by eight points in accordance with § 2F1.1(b)(1)(I), which applies to losses of between $200,000 and $350,000 arising from offenses involving fraud or deceit. Even without the losses attributable to his bank fraud, Lindsay's mail fraud still implicates approximately $276,000 of intended loss and therefore still qualifies Lindsay for the eight-point sentence enhancement. Our decision to reverse the bank fraud convictions thus does not affect this offense level determination.

Nor does our reversal affect Lindsay's sentence enhancement under § 2F1.1(b)(2)(B) for perpetrating a scheme to defraud more than one victim. Section 1B1.3(a) of the Sentencing Guidelines recognizes that a defendant can be held accountable for "relevant conduct" for which he has not been convicted. See United States v. Watts, 519 U.S. 148, 152-54 (1997). A specific offense characteristic, such as that encompassed by § 2F1.1(b)(2)(B), which is used to determine a sentence enhancement, can be based on relevant conduct. See U.S.S.G. § 1B1.3; see also United States v. Fox, 999 F.2d 483, 485-86 (10th Cir. 1993) (upholding use of relevant conduct in determining specific offense characteristic of monetary loss for purposes of §

(continued...)

**IV**

Lindsay's next claim—that the district court violated U.S.S.G. § 3D1.2

when it applied a multi-count analysis to his sentence—lacks suasion. When, as

is presently the case, a defendant fails to object to the district court's application

---

[3](...continued)
2F1.1(b)(1)). In analogous circumstances, in which a defendant pled guilty to one count of defrauding one bank but had actually defrauded three banks in similar schemes, the Second Circuit has held that "the district court erred when it failed to apply the two-level adjustment [under U.S.S.G. § 2F1.1(b)(2)(B)] for defrauding more than one victim," given the relevant conduct of defendant's additional fraudulent activities. United States v. Shumard, 120 F.3d 339, 340 (2d Cir. 1997).
        For an offense to be included within the scope of § 1B1.3(a)(2), the conduct must satisfy a three-pronged standard.

> First, there must be a finding that the offense in question involved conduct described in §§ 1B1.3(a)(1)(A) and (B). Second, the offense must be the type of offense that, if the defendant had been convicted of both offenses, would require grouping with the offense of conviction for sentencing purposes under U.S.S.G. § 3D1.2(d). Third, the offense must have been "part of the same course of conduct or common scheme or plan." U.S.S.G. § 1B1.3(a)(2).

United States v. Taylor, 97 F.3d 1360, 1363 (10th Cir. 1996). Because Lindsay had originally been convicted of bank fraud, the district court did not need to find that the instances of bank fraud constitute relevant conduct. Nonetheless, we may and do conclude that the record contains sufficient evidence to support such an enhancement based on relevant conduct. See Taylor, 97 F.3d at 1364. First, Lindsay's jury concluded that he sought to obtain funds fraudulently from the two banks at issue here. Second, § 2F1.1(b)(2)(B) and the conclusion of the presentencing report demonstrate that Lindsay's bank fraud convictions, were they valid, would be grouped with his mail fraud convictions. Finally, the district court made sufficient findings that Lindsay's attempts to obtain money fraudulently from Mid-Continent Federal Savings Bank, Central National Bank Marion County, and the State of Kansas, were part of a common scheme or plan. See § 1B1.3. comment. (n.9(a)). Accordingly, Lindsay's bank fraud is relevant conduct for the purpose of determining Lindsay's eligibility for a sentence enhancement under § 2F1.1, and we affirm the two-point enhancement he received.

of the Sentencing Guidelines at sentencing, we review a subsequent legal challenge to a sentence for plain error.[4]  See United States v. Gilkey, 118 F.3d 702, 704 (10th Cir. 1997); United States v. Farnsworth, 92 F.3d 1001, 1007-08 (10th Cir. 1996).

The grouping provisions contained in U.S.S.G. Chapter 3, Part D are intended to "limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct."  U.S.S.G. Ch. 3, Pt. D, intro. comment.  Adopting the approach of the presentencing report ("PSR"), the district court in this case concluded that Lindsay's tax and fraud convictions involve unrelated conduct and should be separately grouped under § 3D1.2(d).  Lindsay insists the proper procedure required the grouping of these counts, thereby reducing his offense level by two points by invalidating the sentence enhancement he received pursuant to § 3D1.4.  We disagree.

"[T]he difference in the nature and measure of harm resulting from [multiple] offenses" precludes the grouping of Lindsay's surviving convictions: his tax and mail fraud convictions under § 3D1.2(d).[5]  United States v. Kunzman,

_____

[4]Although Lindsay could not have been expected to anticipate our decision to reverse his bank fraud convictions, he should have raised an objection to application of the multi-count sentencing analysis below.

[5] Section 3D1.2(d) requires that courts shall group together counts

[w]hen the offense level is determined largely on the basis of the total

(continued...)

54 F.3d 1522, 1531 (10th Cir. 1995) (citing United States v. Johnson, 971 F.2d 562, 576 (10th Cir. 1992)).  The convictions at issue involve different harms. Lindsay's tax offenses deprived the federal government of revenue to which it was entitled from him under the tax code.  Lindsay's mail fraud constituted an attempt to obtain funds fraudulently from Kansas.  The measure of harm attributable to Lindsay's offenses could also be seen as distinct.  Under U.S.S.G. § 2T1.1(c)(2)-(3), which concerns failure to file a tax return or pay taxes, the harm attributable to an offense is based on the amount of tax that is actually owed and remains unpaid.  So too, the loss attributable to an act of tax evasion is the amount that a defendant owes and seeks to avoid.  See U.S.S.G. § 2T1.1(c)(1).  By contrast, the harm attributable to an act of mail fraud is the amount of loss a perpetrator creates or seeks to create if that amount is determinable and is greater than the actual loss caused.[6]  See U.S.S.G. § 2F1.1,

---

[5](...continued)
amount of harm or loss, . . . or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

[6] Moreover, while the district court did not do so here, a court may adjust downward the amount of loss attributed to an act of fraud if the unadjusted loss valuation overstates the seriousness of the offense.  See U.S.S.G. § 2F1.1, comment. (n.11).  No comparable provision exists with respect to the valuation of loss attributable to tax offenses under § 2T1.1.  Because the amount of loss attributable to a tax offense is the amount of money actually owed and withheld by a perpetrator, the loss valuation cannot logically be deemed to overstate the seriousness of an offense.

comment. (n.8). In addition, the determination of loss in the mail fraud context, as opposed to the tax context, does not necessarily relate to a pre-existing obligation. Under Johnson and Kunzman, the district court did not commit plain error when it declined to group Lindsay's tax and mail fraud convictions for sentencing purposes.

Furthermore, because the victims and mischief at issue in Lindsay's tax and mail fraud convictions differ, the convictions need not be grouped as part of a criminal plan that is "ongoing or continuous in nature" under § 3D1.2(d). We reject Lindsay's argument that example three in § 3D1.2, comment. (n.6) requires the grouping of these convictions. That guideline example involves the offenses of wire fraud and mail fraud, not mail fraud and tax evasion. The analogy that Lindsay seeks to draw is not apt.

For these reasons, we conclude that the district court's application of a multi-count sentencing analysis did not constitute plain error. Accordingly, Lindsay's sentence enhancement under § 3D1.4 remains valid.

## V

The final issue brought to us for consideration is the assertion that the district court erred when it refused to reduce Lindsay's sentence for acceptance of responsibility. Determination of acceptance of responsibility is a question of fact reviewed under a clear error standard. See United States v. Mitchell, 113 F.3d

1528, 1533 (10th Cir. 1997). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5). A district court's determination concerning whether a defendant has accepted responsibility should not be disturbed "unless it is without foundation." United States v. Amos, 984 F.2d 1067, 1071-72 (10th Cir. 1993).

Based on our review of the record, we conclude that Lindsay's numerous efforts to obstruct justice are inconsistent with acceptance of responsibility and provide ample foundation for the court's denial of this downward adjustment. See United States v. Tovar, 27 F.3d 497, 499 (10th Cir. 1994); see also United States v. Hopper, 27 F.3d 378, 383 (9th Cir. 1994) (noting that appellate courts consider whether the defendant's obstructive conduct is inconsistent with the defendant's claim of acceptance of responsibility). The record reveals that Lindsay behaved in an unruly manner during prior proceedings. For example, Lindsay persistently resisted the court's request that he either swear or affirm that he would testify truthfully. He refused to comply with court security procedures, failed to review court correspondence on which his name appeared in all capital letters, and was non-responsive to questions posed by the court. Lindsay also engaged in an apparent effort to undermine the administration of justice by filing numerous

frivolous documents with the district court. Even though Lindsay lessened the prosecution's trial burden by admitting his failure to file or pay taxes, by failing to object to the government's exhibits, and by refraining from witness cross-examination, for the reasons discussed above, the record nonetheless supports the district court's determination that Lindsay's behavior is inconsistent with acceptance of responsibility. The district court's refusal to award Lindsay a sentence reduction for acceptance of responsibility does not constitute clear error.

## VI

We **AFFIRM** all of Lindsay's convictions except for his bank fraud convictions, which we **REVERSE** and **REMAND** to the district court with directions to **VACATE**.[7] Because we conclude that Lindsay's sentence remains valid, we **AFFIRM** the district court's sentence determination.

---

[7] We also reverse and remand with instructions to vacate the accompanying imposition of the special assessments associated with Lindsay's bank fraud convictions.