

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2009

# USA v. Blackmon

Precedential or Non-Precedential: Precedential

Docket No. 07-4237

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Blackmon" (2009). *2009 Decisions.* Paper 1799.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1799

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4237

UNITED STATES OF AMERICA

v.

ERIC BLACKMON,
Appellant

Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal Action No. 06-cr-00109)
District Judge: Honorable Joseph J. Farnan, Jr.

Submitted Under Third Circuit LAR 34.1(a)
December 2, 2008

Before: AMBRO, and GREENBERG, Circuit Judges,
and O'NEILL,* District Judge

*Honorable Thomas N. O'Neill, Jr., Senior United States
District Judge for the Eastern District of Pennsylvania, sitting by
designation.

(Opinion filed: February 23, 2009)

Robert Epstein
   Assistant Federal Defender
David L. McColgin
   Assistant Appellate Attorney
Maureen Kearney Rowley
   Chief Federal Defender
Christy Unger, Esquire
Federal Community Defender Office for the
   Eastern District of Philadelphia
   Federal Court Division
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA   19106-0000

      Counsel for Appellant


Colm F. Connolly
   United States Attorney
Ilana H. Eisenstein
   Assistant United States
Office of United States Attorney
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE   19899-0000

      Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Eric Blackmon appeals his sentence of 235 months' imprisonment for conspiracy to distribute cocaine and money laundering.[1] He argues that his sentence is procedurally unreasonable because the District Court miscalculated the proper federal Sentencing Guidelines range under the money laundering Guideline, U.S. Sentencing Guidelines Manual § 2S1.1 ("Laundering of Monetary Instruments") (hereinafter "U.S.S.G."). He contends that the District Court erred in two ways: (1) by classifying him as a direct money launderer under Guidelines § 2S1.1(a)(1) rather than as a third-party money launderer under § 2S1.1(a)(2); and (2) by incorporating his involvement in the cocaine conspiracy as relevant conduct for purposes of calculating his Guidelines base offense level under § 2S1.1(a)(1). For the following reasons, we affirm the District Court's sentence. We do so with a warning that what follows is abstruse.

---

[1]The District Court had jurisdiction under 18 U.S.C. § 3231. Blackmon filed a timely notice of appeal. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## I.    BACKGROUND

### A.    The Cocaine Conspiracy

Blackmon was involved in a conspiracy to ship cocaine from California to Philadelphia dating back to September 2005. He shipped cocaine from California to Shawn Williams in Philadelphia, and Williams would ship packages of cash back to Blackmon. All shipments were made using Federal Express. In December 2005, federal law enforcement agents intercepted a package containing $74,296—representing the value of approximately five kilograms of cocaine—sent by Williams to Blackmon. The package had both their names and addresses on the mailing label. California authorities went to Blackmon's address and spoke to him, but he denied any knowledge of the intercepted package.

The conspiracy continued, and in January 2006 Bradley Torrence joined. He introduced a more sophisticated method of shipping the cocaine using stolen Federal Express business account numbers. He also paid Federal Express couriers to drop off the packages at agreed locations in the Philadelphia area and mark them as "delivered" in the company system.

Federal agents soon identified a pattern of Federal Express airbills with stolen business account numbers and fictitious addresses originating in California and destined for the same Philadelphia zip code. In March 2006, they followed two of these packages sent from San Francisco to a Philadelphia

parking garage where they observed a Federal Express courier drive into the garage. Shortly thereafter, Williams and the courier drove out of the garage. The agents stopped them and recovered the two packages from Williams's car, each of which contained three kilograms of cocaine.

Williams, Torrence, and the courier—all located in Pennsylvania—were arrested, indicted, and agreed to cooperate with the Government to confirm Blackmon as the California source of the cocaine. In August 2006, Williams recorded phone calls with Blackmon arranging the shipment of one kilogram of cocaine for $15,000. Law enforcement observed Blackmon at the address where Federal Express delivered the $15,000, and a few days later the cocaine arrived via Federal Express in Philadelphia. Thereafter, Blackmon was arrested. He admitted that he was the person speaking to Williams on the recorded phone calls.

### B. Guilty Plea and Sentencing

A federal grand jury indicted Blackmon in 2007 for various cocaine distribution offenses and money laundering. He entered a guilty plea on two of the counts: (1) conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One); and (2) money laundering related to the August 2006 sting transaction, in violation of 18 U.S.C. § 1956(a)(3)(A) (Count Four). At sentencing, the District Court thoroughly considered and adopted the Guidelines range calculations in the Pre-Sentence

5

Investigation Report prepared by the Probation Office (the "PSR").

The PSR determined that the two counts involved substantially the same harms, so that, in accord with the grouping rules for closely related multiple offenses under Guidelines § 3D1.2, the counts should be considered together.[2] *See* U.S.S.G. §§ 3D1.1(a) (instructing the sentencing judge to group certain counts when "a defendant has been convicted of more than one count"), 3D1.2 (stating, *e.g.*, that counts

_____

[2]Guidelines § 3D1.2, titled "Groups of Closely Related Counts," states in pertinent part:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> . . . .
>
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.
>
> Offenses covered by the following guidelines are to be grouped under this subsection: . . . §§ 2D1.1 . . . 2S1.1[.]

"connected by a common criminal objective or constituting part of a common scheme or plan[,]" or "[w]hen the offense level is determined largely on the basis of the . . . quantity of a substance involved," should be grouped, including offenses under the money laundering Guideline, § 2S1.1). The offense level applicable to the group is the offense Guideline that produces the highest offense level. *Id*. § 3D1.3. The PSR determined that Count Four, the money laundering offense corresponding to Guidelines § 2S1.1, produced the higher offense level for purposes of setting Blackmon's Guidelines range.

Next, the PSR calculated the base offense level for money laundering under Guidelines § 2S1.1. The PSR applied subsection (a)(1) of § 2S1.1, which sets the base level by incorporating the "underlying offense from which the laundered funds were derived." *Id*. § 2S1.1(a)(1). It concluded that the distribution of cocaine resulting from the sting transaction was the "underlying offense," and further incorporated Blackmon's participation in the cocaine conspiracy as "relevant conduct." *See id*. § 1B1.3 ("Relevant Conduct").[3] To calculate the base

---

[3]The "relevant conduct" rule specifies the scope of conduct for which a defendant can be held accountable in setting the offense level. Sentencing Guidelines § 1B1.3, "Relevant Conduct (Factors that Determine the Guideline Range)," states in pertinent part:

(a) Chapters Two (Offense Conduct) and Three

7

offense level, it used the drug quantity from the conspiracy (and the single kilogram of cocaine from the sting transaction), which it reported involved 50 to 150 kilograms of cocaine, resulting in a base offense level of 36. *See id.* § 2D1.1(c)(2) ("Drug Quantity Table").

Finally, the PSR considered any adjustments to the offense level. Guidelines § 2S1.1(b) includes a two-level enhancement for certain listed offenses. Blackmon pled guilty to 18 U.S.C. § 1956, which is a listed offense under this specific

---

(Adjustments). Unless otherwise specified, . . . cross references in Chapter Two, and [ ] adjustments in Chapter Three, shall be determined on the basis of the following:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

. . . .

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]

enhancement subsection.  *Id.* § 2S1.1(b)(2)(B).  Thus his total offense level rose to 38.  The PSR deducted three levels for acceptance of responsibility, bringing the final offense level to 35.

Blackmon objected to the PSR's calculations.  Specifically, he contested the drug amount, arguing that, among other things, the conspiracy involved between 15 and 50 kilograms of cocaine, resulting in a base offense level of 34.  He also objected to the money laundering base offense calculation, asserting that only the $15,000 associated with the sting transaction should be considered, and not the drug amount from the cocaine conspiracy, as relevant conduct.

At the sentencing hearing, the Government supported the PSR finding regarding drug quantity by presenting testimony from a Federal Bureau of Investigation Special Agent and extensive evidence indicating that the cocaine involved in the conspiracy weighed in excess of 150 kilograms.  Its evidence included the Federal Express airbills that carried the suspected cocaine packages (weighing approximately 148 kilograms), the seizure of $75,000 and five kilograms of cocaine in December 2005, the seizure of two Federal Express packages from Williams containing six kilograms of cocaine in March 2006, and Blackmon's shipment of one kilogram of cocaine connected to the August 2006 sting transaction.  Special Agent Scott Duffey testified to identify the Government's exhibits and explain the related patterns of airbills and different stages of the conspiracy.  Williams and Torrence also testified to the scope of

the conspiracy and Blackmon's participation.

The District Court overruled Blackmon's objections and determined that the Guidelines range for the two grouped counts was 188 to 235 months' imprisonment. Before deciding on a final sentence, the Court considered the relevant 18 U.S.C. § 3553(a) sentencing factors. Specifically, it found that "magnitude of the offense" was "overwhelming." It also noted Blackmon's past offenses for armed robbery and drugs, for which he had served a stint in prison, but that "[n]one of that seemed to have made an impact on you." After evaluating all the factors, the Court imposed a prison sentence at the top of the Guidelines range—235 months.

## II.    ANALYSIS

Blackmon challenges the procedural reasonableness of his sentence. He argues that the PSR and District Court improperly calculated the base offense level for the money laundering count.[4] Specifically, he asserts that he should have been sentenced under § 2S1.1(a)(2) rather than § 2S1.1(a)(1) of the money laundering Guideline. Alternatively, he argues that, even if we determine he was properly sentenced under subsection (a)(1), the resulting base offense level was inflated because the PSR and District Court improperly incorporated the

---

[4]Blackmon does not challenge the propriety of grouping the counts under Guidelines § 3D1.2.

10

cocaine conspiracy as relevant conduct under Guidelines § 1B1.3.

The Sentencing Guidelines are now advisory, but a sentence will be found procedurally unreasonable when a district court fails to calculate accurately the sentencing range suggested by the Guidelines. *Gall v. United States*, 128 S.Ct. 586, 597 (2007). We review a district court's legal conclusions regarding the Guidelines *de novo*, *see United States v. Hawes*, 523 F.3d 245, 248–49 (3d Cir. 2006), its application of the Guidelines to the facts for abuse of discretion, *id.*, and its factual findings for clear error, *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (*en banc*).

The starting point for this discussion is the applicable Sentencing Guidelines provision. Guidelines § 2S1.1, "Laundering of Monetary Instruments," corresponds with violations of 18 U.S.C. § 1956. Section 2S1.1 states in relevant part:

(a) Base Offense Level:

**(1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense** (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); **and (B) the offense level for that offense can be**

11

**determined**; or

(2) 8 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to **the value of the laundered funds**, otherwise.

(b) Specific Offense Characteristics

(1) If (A) subsection (a)(2) applies; and (B) the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote[,] (i) an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical; . . . .

(2) (Apply the Greatest):

(A) . . . .

(B) If the defendant was convicted under 18 U.S.C. § 1956, increase by 2 levels.

(emphases added).

## A.      Application of § 2S1.1(a)(1) Was Proper

Blackmon first argues that the District Court should have

12

sentenced him under Guidelines § 2S1.1(a)(2), which focuses on the amount of funds laundered for purposes of calculating the base offense level, rather than § 2S1.1(a)(1), which incorporates the "underlying offense." He posits that his base offense level should have been derived solely from the amount of funds laundered in the August 2006 sting transaction. According to his calculations, because only $15,000 was involved in the sting transaction, his base offense level under subsection (a)(2) would have been 12, which is substantially less than the PSR's calculation of 36 under subsection (a)(1).[5]

To understand fully the error in Blackmon's argument, we need to look at the history of the money laundering Guideline section. Prior to 2001, § 2S1.1 set the base offense level for all money laundering according to the amount of funds laundered, regardless of the culpability of the offender. *See* U.S.S.G. § 2S1.1 (2000). It was amended to its current form in 2001, and that applies here. The money laundering Guideline now accounts for the culpability of the offender. The historical

[5]Blackmon's complete Guidelines calculation is that, after starting at a base offense level of 12 under § 2S1.1(a)(2), 6 levels would be added under subsection (b)(1), because he "believed that . . . the laundered funds were the proceeds of . . . an offense involving the . . . distribution of a controlled substance." Excluding any deduction for acceptance of responsibility, he totals his adjusted offense level at 20, adding another 2 levels for the specific offense characteristic under subsection (b)(2)(B).

13

notes indicate that the amended Guideline is intended to "tie[] offense levels for money laundering more closely to the underlying conduct that was the source of the criminally derived funds." U.S.S.G. App. C, Amend. 634, at 234 (2001).

The Guideline distinguishes between direct money launderers under subsection (a)(1) and third-party money launderers under subsection (a)(2). *Id.* at 227–28. Direct launderers are those who also commit the crime that produces the illicit funds, whereas third-party launderers have no involvement in the underlying offense and only launder the money generated from that offense. *Id.* at 228. Not surprisingly, a defendant sentenced under subsection (a)(1) often gets a higher sentence than a less culpable offender sentenced under subsection (a)(2). These two subsections provide alternative methods for determining a defendant's base offense level.

To be a direct money launderer, subsection (a)(1) requires that two conditions be met: (A) the defendant is responsible for the "underlying offense," either because he committed it or would be accountable for it under the relevant conduct Guideline § 1B1.3; and (B) the base level of the underlying offense must be determinable. U.S.S.G. § 2S1.1(a)(1)(A)–(B). The sentencing base level for direct launderers is determined by incorporating the offense level for the "underlying offense from which the laundered funds were derived." *Id.* § 2S1.1(a)(1).

14

If either of the two conditions for a direct launderer cannot be met, then the defendant is sentenced as a third-party launderer under subsection (a)(2). These offenders generally are not involved in the underlying offense and their sentencing base level is set by the "value of the laundered funds." *Id.* § 2S1.1(a)(2).

Blackmon argues that he should have been considered a third-party money launderer under § 2S1.1(a)(2). He contends that there was no underlying offense because the $15,000 he received representing drug proceeds was supplied by the Government as part of a sting transaction and not by Williams. Put another way, he argues that the first condition required to be treated as a direct launderer, subpart (A), was not met.

This argument is untenable. The laundering offense is not "fictional," as Blackmon states. *See United States v. Perez*, 992 F.2d 295, 298 (11th Cir. 1993) (holding that a money laundering enhancement was applicable because defendant knew the funds were represented to be proceeds of a drug transaction); *United States v. Contreras*, 950 F.2d 232, 237 (5th Cir. 1991) (explaining that "factual impossibility is not a defense if the crime could have been committed had the attendant circumstances been as the actor believed them to be"). As part of Blackmon's plea agreement, he admitted the $15,000 represented drug proceeds that he accepted as payment for shipping one kilogram of cocaine to Philadelphia. Thus Blackmon committed the underlying offense of cocaine

15

distribution.[6] *See* U.S.S.G. § 2S1.1 App. Note 2(B) ("defendant must have committed the underlying offense or be accountable for the underlying offense").

Blackmon does not dispute that the second condition of § 2S1.1(a)(1), subpart (B), was met. This condition requires that the base level for the underlying offense be determinable. As the PSR determined, the underlying offense from which the laundered funds were derived was cocaine distribution as part of the sting transaction. The base offense level for drug offenses is set by reference to the Guidelines drug quantity table. *See* U.S.S.G. § 2D1.1(c)(2) (indicating a base offense level of 36 for an offense involving at least 50 kilograms but less than 150 kilograms of cocaine). Accordingly, we hold that the District Court properly treated Blackmon as a direct money launderer under § 2S1.1(a)(1).

### B. The Cocaine Conspiracy Was Properly Incorporated as Relevant Conduct Under § 2S1.1(a)(1)

Blackmon also argues that, should we determine he is a direct money launderer under Guidelines § 2S1.1(a)(1), the District Court, by adopting the PSR, improperly calculated the base offense level because it included the cocaine conspiracy

---

[6]Indeed, Count Four of the Indictment lists the "distribution of cocaine," in violation of 21 U.S.C. § 841, as the "unlawful activity" underlying the money laundering offense.

16

from Count One in the "underlying offense" as relevant conduct under Guidelines § 1B1.3. *See* Appellant's Br. 20 (arguing the PSR "carr[ied] over the offense level for the drug conspiracy to the money laundering [G]uideline[], regardless of the fact that the government had failed to offer any evidence that the drug conspiracy involved any actual acts of money laundering"). The incorporation of the drug amount from the cocaine conspiracy added significantly to the base offense level. He contends that only the $15,000 from the sting transaction should control the base offense level.

The Government responds to this argument by explaining that Blackmon distorts the issue. It asserts that the question of incorporating relevant conduct into the "underlying offense" under § 2S1.1(a)(1) is not whether there was relevant money laundering conduct during the course of the cocaine conspiracy. Instead, it is whether the cocaine conspiracy was relevant conduct to the cocaine distribution, which we have already determined is the "underlying offense" for purposes of sentencing Blackmon as a direct money launderer under subsection (a)(1).

Blackmon's argument mistakenly focuses on the laundered funds, which is the method subsection (a)(2) uses to calculate the base level by determining the "value of the laundered funds," rather than on the nature of the offense, which is the method subsection (a)(1) uses to calculate the base level by considering the "underlying offense." For drug offenses, such as the cocaine distribution and the overarching cocaine

17

conspiracy, the Guidelines direct that the base offense level is set by the quantity of drugs involved. *See* U.S.S.G. § 2D1.1(c)(2) ("Drug Quantity Table").

Here we examine two questions: (1) whether, in calculating the base offense level under § 2S1.1(a)(1), a district court can incorporate any relevant conduct under Guidelines § 1B1.3 into the "underlying offense"; and (2) if relevant conduct can be incorporated, whether the District Court properly treated the cocaine conspiracy as such. We answer yes to both questions. Accordingly, we hold that, in calculating Blackmon's base offense level, the District Court properly considered not only the single kilogram of cocaine directly related to the money laundering offense, but also his involvement in the cocaine conspiracy, as relevant conduct.

Although we have not addressed the more general question whether relevant conduct under Guidelines § 1B1.3 can be incorporated into § 2S1.1(a)(1), other appellate courts have considered this issue and have uniformly concluded that relevant conduct is applicable. *See, e.g.*, *United States v. Cruzando-Laureano*, 440 F.3d 44, 48 (1st Cir. 2006) (directing "the sentencing court to take as the base offense level for purposes of § 2S1.1 the full calculated offense level that applies to the offense which produced the laundered funds" by "calculat[ing] the sentence as it would have applied to the extortion counts standing alone, [including all relevant conduct,] . . . then . . . return to § 2S1.1"); *United States v. Charon*, 442 F.3d 881, 887–88 (5th Cir. 2006) (explaining the "underlying offense"

18

includes all relevant conduct); *see also United States v. Anderson*, 526 F.3d 319 (6th Cir. 2008) (determining defendant's involvement in the drug conspiracy and the amount of drugs she "could have reasonably foreseen" for setting her base offense level on her money laundering charge). We agree with our sister courts.

Under § 2S1.1(a)(1), we take the view of the First Circuit Court that, to calculate correctly the base offense level of the "underlying offense," the sentencing judge must consider that offense a stand-alone crime. *Cruzado-Laureano*, 440 F.3d at 48. Here, the underlying offense for the money laundering count is the cocaine distribution. If the cocaine distribution were a stand-alone crime, there would be no question that the relevant conduct rules of § 1B1.3 would apply to determine the appropriate Guidelines range. U.S.S.G. §§ 1B1.2(b) ("After determining the appropriate offense guideline section[,] . . . determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)."), 1B1.3. To illustrate, relevant conduct plays a significant role in drug offenses when calculating the quantity of drugs involved in an offense to which Guidelines § 2D1.1 applies, such as this case. *See id.* § 2D1.1 cmt. n.12 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See § 1B1.3(a)(2) (Relevant Conduct)."); *United States v. Clark*, 415 F.3d 1234, 1240–41 (10th Cir. 2005) ("Under the Guidelines, a sentencing court in calculating the quantity of drugs involved in an offense should consider all quantities stemming from a defendant's 'relevant conduct.'").

19

Blackmon argues that we should not incorporate relevant conduct in this context because it is not explicitly listed in § 2S1.1(a)(1). That subsection explicitly references the relevant conduct Guideline, § 1B1.3(a)(1)(A), to make a defendant "accountable for the underlying offense," but the text does not include a reference to § 1B1.3(a)(2). Subsection 1B1.3(a)(2) addresses the application of relevant conduct to determine the offense level when multiple counts are grouped under Guidelines § 3D1.2(d), as is the circumstance here. Essentially, Blackmon is making a textual argument based on *expressio unius est exclusio alterius* (to say one is to exclude the rest), that the express mention of one part of the relevant conduct Guideline in § 2S1.1(a)(1) of the money laundering Guideline excludes all others.

The Fifth Circuit Court dismissed a similar argument in *Charon*, 442 F.3d 881, which provides a roadmap for our analysis. Like Blackmon, Charon was caught in a sting transaction involving the distribution of cocaine. He pled guilty to two counts—one count of cocaine distribution related to the sting transaction and one count of money laundering related to the purchase of property from drug proceeds one year prior to the sting transaction. *Id.* at 884. The Court grouped the two counts under Guidelines §§ 3D1.1 and 3D1.2(d), and, as the grouping rules require under § 3D1.3(b), used the money laundering offense to calculate his base offense level because it produced the higher offense level. *Id.* at 884, 888.

It concluded that Charon was a direct money launderer

20

under § 2S1.1(a)(1), and that the offense underlying his money laundering was cocaine distribution. *Id.* at 888. Charon asserted that the calculation of his money laundering base offense level should be based only on the drugs directly connected to the money laundering offense and not expanded to any other drug dealing as relevant conduct. *Id.* at 886. In making this claim, he relied on a textual argument similar to Blackmon's—"that the Sentencing Commission did not direct the courts to use relevant conduct" in the money laundering Guideline, § 2S1.1(a)(1). *Id.* at 886, 888.

In rejecting Charon's argument, the Court stated that because his two counts were grouped under § 3D1.2(d), incorporating "relevant conduct is inherent in the grouping rules." *Id.* at 888. Thus, it concluded that relevant conduct should be included in the "underlying offense." *Id.* (quoting U.S.S.G. § 1B1.3(a)(2) (Relevant Conduct) ("'[S]olely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts [as here], all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction' shall be used in determining the base offense level.")). Because Charon was involved in an overarching drug-dealing business and the drug transaction that formed the basis for the money laundering count was a small part of that common scheme, the Court held that the sentencing judge appropriately considered all relevant conduct in calculating the drug weight for purposes of setting the money laundering base offense level. *Id.* 888–89.

21

As Blackmon argues, the text of § 2S1.1(a)(1) does not reference the application of relevant conduct in this type of situation, nor does the Sentencing Commission in its commentary explicitly direct that a court apply it. We agree with the *Charon* court, however, that nothing in § 2S1.1, its sentencing commentary, or any other pertinent Guideline, indicates that the sentencing judge should apply the grouping rules under § 3D1.2 differently in the context of § 2S1.1(a)(1). *See id.* at 888 (stating that the "analysis under § 3D1.2(d) necessarily takes into account the 'relevant conduct' provisions of the Guidelines, and § 2S1.1(a)(1) does not require the court to do anything differently under that section"); *United States v. Rudolph*, 137 F.3d 173, 176 (3d Cir. 1998) (explaining that two uncharged bribes qualify as relevant conduct because they would have been grouped under § 3D1.2(d) with the charged offense, and relevant conduct under § 1B1.3(a)(2) includes "all acts . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction"). Relevant conduct is an "important feature of the [G]uidelines," and we know no reason to depart here from the standard practice. *See* Joseph E. Kennedy, Making the Crime Fit the Punishment, 51 Emory L.J. 753, 809 n.239 (2002) (citing William W. Wilkins, Jr. & John R. Steer, Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines, 41 S.C. L. Rev. 495 (1990)).

The "mixing and matching of different guideline provisions" that Blackmon protests is precisely what the Guidelines require a sentencing judge to do in using the base offense level of the underlying offense to calculate a suggested

22

sentencing range for money laundering. As we stated earlier, we also agree with our First Circuit colleagues in *Cruzando-Laureano*, 440 F.3d at 48, that perhaps the best way to think of this complex "mixing" of Guidelines provisions is to identify the "underlying offense" under § 2S1.1(a)(1), and then treat it as a stand-alone crime for purposes of calculating the base offense level. After that calculation has been set, the sentencing judge should return to the money laundering Guideline and add any specific offense characteristics under § 2S1.1(b). Accordingly, the District Court properly included relevant conduct in the "underlying offense."

Because relevant conduct can be incorporated into the "underlying offense" under Guidelines § 2S1.1(a)(1), we consider whether the cocaine conspiracy is relevant conduct to the sting transaction. To qualify as relevant, and therefore attributable to a defendant for sentencing purposes under § 1B1.3(a)(2), three conditions must be met: (1) it must be the type of conduct described in § 1B1.3(a)(1)(A) and (B) ("all acts and omissions committed . . . by the defendant"); (2) grouping would be appropriate under § 3D1.2(d); and (3) it must have been "part of the same course of conduct or common scheme or plan" under § 1B1.3(a)(2). *See United States v. Wilson*, 106 F.3d 1140, 1144 (3d Cir. 1997); *United States v. Taylor*, 97 F.3d 1360, 1363 (10th Cir. 1996). Parts one and two are clearly met. Blackmon pled guilty to the charged cocaine conspiracy and the PSR grouped the conspiracy and money laundering counts, which Blackmon does not appeal.

23

Part three requires some discussion. Under § 1B1.3(a)(2), relevant conduct for drug offenses includes "not only all controlled substances involved 'during the commission of the offense of conviction,' but also those substances involved as 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Boone*, 279 F.3d 163, 178 (3d Cir. 2002) (quoting U.S.S.G. § 1B1.3(a)(2)). Application Note 9 of § 1B1.3 describes what comprises a "common scheme or plan" or the "same course of conduct" for relevant conduct. *Id.* App. Note 9(A)–(B). Subpart (A) describes a "common scheme or plan" as being "substantially connected" by at least one common factor, including common accomplices, common purpose, or similar *modus operandi*. *Id.* Subpart (B) describes the "same course of conduct" as "sufficiently connected or related to each other," and involves factors such as the degree of similarity in offenses, the regularity or number or repetitions, and the time interval between offenses. *Id.*

In this case, there is no question that the cocaine distribution (which was part of the sting transaction) and the overarching cocaine conspiracy involved a common scheme or plan. Notwithstanding the five-month lag between the August 2006 sting transaction and Williams' March 2006 arrest in Philadelphia, the former involved common accomplices and similar methods of operating (*i.e.*, *modus operandi*). The Government points out that "the defendant's one-kilogram shipment in the sting transaction involved the exact same pattern of Federal Express shipments, the same would-be customer

24

[Williams], the same $15,000 price per kilogram, and the same geographic scope as the earlier cocaine conspiracy." Thus, we agree with the District Court's finding that the sting transaction was connected to the drug conspiracy for purposes of calculating the Guidelines range.

## CONCLUSION

We hold that relevant conduct under Sentencing Guidelines § 1B1.3 is a relevant consideration for sentencing judges when calculating the base offense level for direct money launderers under § 2S1.1(a)(1). Blackmon does not appeal the District Court's finding that between 50 and 150 kilograms of cocaine were involved in the drug conspiracy. Thus, 36 was the correct base offense level for the money laundering count. *See* U.S.S.G. § 2D1.1(c)(2). Nor does he appeal the District Court's two-level specific offense enhancement under § 2S1.1(b)(2)(B) for pleading guilty under 18 U.S.C. § 1956. Accordingly, the District Court's final overall offense level calculation of 35, which included a three level deduction for acceptance of responsibility, was proper. In this context and for the reasons noted above, we affirm the sentence imposed by the District Court.