NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2550
_____

UNITED STATES OF AMERICA

v.

SHERWIN PINNOCK, a/k/a Troy Sherwin Pinnock,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cr-00260-003)
District Judge:  Honorable Donetta W. Ambrose

_____

Submitted Under Third Circuit LAR 34.1(a)
July 16, 2010

Before:   RENDELL, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: July 19, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Sherwin Pinnock was convicted of conspiracy to distribute and to possess with

intent to distribute marijuana, as well as conspiracy to launder monetary instruments.  The

United States District Court for the Western District of Pennsylvania sentenced him to 97

months' imprisonment. Pinnock challenges his sentence, contending that the District Court erred when it attributed to him, in calculating the applicable range under the Sentencing Guidelines, the amount of marijuana distributed throughout the conspiracy. For the reasons that follow, we will affirm.

## I.      Background

Because we write solely for the parties, we assume familiarity with the case and discuss only those facts necessary to our decision. Pinnock was involved in a conspiracy to transport marijuana, via UPS or FedEx, from Tucson, Arizona to Pittsburgh, Pennsylvania, and to wire payment for the drugs back from Pittsburgh to Tucson. The conspiracy was led in Pittsburgh by Andre Williams, who had various individuals, including Pinnock, working to identify places in Pittsburgh, typically vacant or abandoned buildings, where the marijuana could be shipped. Also, Williams, Pinnock, and others would recruit individuals, primarily young women, to wait at those places to accept delivery of the packages, and to wire money back to Tucson. This enterprise operated for approximately five years, and the total amount of marijuana distributed by the members of the conspiracy in and around Pittsburgh was 516.68 kilograms.

A grand jury in the Western District of Pennsylvania returned a two-count, superseding indictment against Pinnock, charging him with conspiracy to distribute and to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846 (Count One), and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h)

2

(Count Two).  Pinnock pled not guilty, proceeded to a jury trial, and was convicted on both counts.

At sentencing, the District Court determined that Pinnock should be held accountable for all of the 516.68 kilograms of marijuana distributed by the conspiracy, and therefore the Court calculated his base offense level to be 28.  *See* U.S.S.G. § 2D1.1(c)(6).  Pinnock then received a two-point increase in his offense level because of the money laundering conviction, *see* U.S.S.G. § 2S1.1(b)(2)(B), bringing his total offense level to 30.  That offense level, combined with Pinnock's criminal history category of I, resulted in an advisory Sentencing Guidelines range of 97 to 121 months' imprisonment.  The District Court sentenced Pinnock to 97 months' imprisonment on each of the two counts, to run concurrently, to be followed by supervised release terms of four years on Count One and three years on Count Two, to run concurrently, and a special assessment of $200.  Pinnock now appeals, contending that the District Court erred when it attributed to him all of the marijuana distributed by the conspiracy.

## II.    Discussion[1]

"When reviewing the sentencing decisions of the district courts, we exercise plenary review over legal questions about the meaning of the [S]entencing [G]uidelines,

---

[1]  The District Court had jurisdiction under 18 U.S.C. § 3231, which grants to the "district courts of the United States ... original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

but apply the deferential clearly erroneous standard to factual determinations underlying their application." *United States v. Collado*, 975 F.2d 985, 990 (3d Cir. 1992). We review the District Court's "application of the Guidelines to the facts for abuse of discretion[.]" *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009).

The Guidelines state that "[w]ith respect to offenses involving contraband (including controlled substances), [a] defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3 cmt. n.2. In *Collado*, we interpreted that provision of the Guidelines and concluded that "whether an individual defendant may be held accountable for amounts of drugs involved in reasonably foreseeable transactions conducted by co-conspirators depends upon the degree of the defendant's involvement in the conspiracy." *Collado*, 975 F.2d at 995. We explained that "[i]n assessing the defendant's involvement, courts must consider whether the amounts distributed by the defendant's co-conspirators were distributed in furtherance of the ... jointly-undertaken ... activity, were within the scope of the defendant's agreement, and were reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake." *Id.* (internal quotation marks omitted). We made clear in *Collado* that "a searching and individualized inquiry into the circumstances surrounding

4

each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role." *Id.*

Pinnock argues that the District Court failed to conduct that kind of searching and individualized inquiry and that, if it had, it would have determined that he was only "tangentially involved" as a "gofer" and could not have known the full scope of the conspiracy. (Appellant's Br. at 6.) Accordingly, Pinnock argues that the 516.68 kilograms of marijuana should not have been attributed to him because, given his "minor role," it was not reasonably foreseeable to him that the conspiracy would have distributed that amount. (*Id.* at 9.) We disagree.

The District Court engaged in a lengthy exchange at the sentencing hearing with both the government and defense counsel, during which Pinnock's role in the conspiracy was discussed. The Court then concluded that Pinnock's role was "all encompassing," that "he saw it all," that "he was there at the beginning, the middle, and the end," and that "it was all reasonably foreseeable," due to "the criminal activity" he engaged in, "the knowledge that he had about the scope of the conspiracy [and] the knowledge he had about the conduct of the other people involved in the conspiracy." (App. at 58-63.) The record supports the District Court's conclusion and belies Pinnock's assertion that his role was "minor."

Kristina Watson, one of the women recruited to assist in the conspiracy, testified that Pinnock on two or three occasions gave her addresses of locations in Pittsburgh

where she would accept delivery of marijuana shipments. Stephanie Salvant, another woman recruited to assist in the drug enterprise, testified that Pinnock and other members of the conspiracy drove around the Pittsburgh area looking for suitable delivery locations. Salvant also testified that Pinnock (1) was present during discussions among the members of the conspiracy regarding receiving packages of marijuana and sending wire payments; (2) provided her with housing when she traveled from her home in Florida to Pittsburgh to assist the conspiracy; (3) drove her to Western Union locations so that she could wire payments for the drugs; (4) paid her for her efforts in completing the money transfers; and (5) stored marijuana at his residence. Yolanda Pettway, yet another woman recruited by the conspiracy, likewise testified that Pinnock drove her to Western Union locations to complete wire transfers and paid her for her efforts. Shanta Foley, another witness for the government, testified that she received shipments of marijuana for Pinnock to "make amends" for prior shipments that had been stolen by members of her family, and that Pinnock stored marijuana at his residence.

In light of the evidence, the District Court did not err, let alone clearly so, in finding that Pinnock's role effectively allowed him to "[see] it all," nor did it abuse its discretion when it decided that Pinnock should be held accountable for the 516.68 kilograms of marijuana distributed by the conspiracy. Given the level of Pinnock's involvement, it was reasonable for the Court to conclude that the "drug transactions conducted by the [conspiracy as a whole] were within the scope and in furtherance of the

6

activity [Pinnock] agreed to undertake," *Collado*, 975 F.2d at 995, and that the amount of marijuana distributed throughout the conspiracy was reasonably foreseeable to Pinnock.

**III.    Conclusion**

In light of the foregoing, we will affirm the judgment of the District Court.