NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4222, 12-4223, 13-1141
_____


UNITED STATES OF AMERICA

v.

DONALD M. HELLINGER,
*Appellant in 12-4222*

RONALD HELLINGER,
*Appellant in 12-4223*

MICHAEL WEISBERG,
*Appellant in 13-1141*
_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cr-00083)
District Judge:  Honorable R. Barclay Surrick
_____


Submitted Under Third Circuit LAR 34.1(a)
September 12, 2013


Before:  MCKEE, SMITH, and SLOVITER, Circuit Judges

(Filed: September 13, 2013)


_____

O P I N I O N
_____

SLOVITER, Circuit Judge.

Donald Hellinger, Ronald Hellinger, and Michael Weisberg ("Appellants") each appeal the sentences imposed on them following their guilty pleas to operating an illegal money-transmitting business. For the following reasons, we will affirm.[1]

I.

In 2011, a grand jury returned a fourteen-count indictment charging Appellants and three others – Jami Pearlman, Michele Quigley, and Randy Trost – in all counts. Appellants pled guilty to Count Two of the indictment, which alleged that between January 2005 and February 2006, they and their codefendants operated a money-transmitting business without complying with federal registration requirements, thereby violating 18 U.S.C. § 1960.

Appellants were owners and managers of Payment Processing Center, Inc. ("PPC"). They stipulated that PPC processed payments on behalf of offshore internet gambling companies. Appellants set up bank accounts through which PPC would receive wire transfers from these gambling companies. The gambling companies would then email to PPC the amount of money owed to certain bettors, and PPC would prepare and deliver checks from its accounts to the bettors. PPC would also prepare and deliver checks to local vendors of the gambling companies. PPC did not participate in the gambling business except for its transmission of money from the gambling companies to

_____

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and this court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

the bettors and vendors. PPC did not register with the United States Department of the Treasury as a money-transmitting business, as required by 31 U.S.C. § 5330.

After Appellants pled guilty, the District Court determined that U.S.S.G. § 2S1.3 was the appropriate offense guideline. The Court also applied a sentencing enhancement pursuant to U.S.S.G. §3B1.1(a) for all three Appellants.[2] It sentenced Donald Hellinger to thirty six months imprisonment and ordered him to pay a $10,000 fine; sentenced Ronald Hellinger to twenty seven months imprisonment; and sentenced Weisberg to twenty two months imprisonment.

## II

### A. *Offense Guideline*

Appellants argue that the District Court erred in identifying § 2S1.3 rather than § 2S1.1(a)(1) as the applicable offense guideline. We review an "application of the Guidelines to the facts for abuse of discretion." *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009).[3]

Appendix A of the Sentencing Guidelines lists both § 2S1.3 and § 2S1.1 as applicable offense guidelines for violations of 18 U.S.C. § 1960. *See* U.S.S.G. app. A. "If more than one guideline section is referenced for the particular statute," Appendix A

---

[2] Although the District Court did not explicitly state that it was applying the §3B1.1(a) enhancement, the Court adopted the Presentence Investigation Reports ("PSRs") which applied the enhancement for each Appellant. Neither Appellants nor the Government dispute that the Court applied this enhancement.

[3] Appellants contend that we should apply de novo review. However, the interpretation of a guideline provision is not at issue here. Rather, the issue is which offense guideline better fits the facts in this case.

3

instructs courts to "use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." *Id.*

Section 2S1.3 applies to the operation of a money-transmitting business without complying with state and federal registration requirements in violation of 18 U.S.C. §§ 1960(b)(1)(A) and (B). *See id.* §2S1.3 cmt. Section 2S1.1, on the other hand, applies to money laundering in violation of 18 U.S.C. § 1960(b)(1)(C). *See id.* at § 2S1.1 cmt.; *see also* § 1960 (b)(1)(C) (referring to "the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity"). Appellants argue that § 2S1.1(a)(1) is the applicable offense guideline because it more closely tracks the offense conduct charged against them. Although Appellants admit that the operation of an unlicensed money-transmitting business "is certainly a central allegation of Count Two," they maintain that "the overwhelming weight of the alleged conduct describes service as the money laundering arm of illegal internet gambling businesses, through collection of bets and payment of winners, and through payment of invoices to vendors." Appellants' Br. at 37.

Appellants' offense conduct involved both the operation of an unlicensed money-transmitting business and money laundering. The District Court relied on the formal charging language of Count Two of the Indictment and Appellants' conduct in determining which offense guideline was more applicable. The language of Count Two – "knowingly conducted, controlled, managed, supervised, directed, and owned all or part of a money transmitting business . . . while failing to comply with the money transmitting

4

business registration requirements under Title 31, United States Code, Section 5330" –
charges a violation of § 1960(b)(1)(B), which corresponds with offense guideline §
2S1.3. App. at 94. The Court's reliance on the charging language was proper. Thus, the
District Court did not abuse its discretion in choosing § 2S1.3 as the more appropriate
offense guideline.

B. *Sentencing Enhancement*

Appellants allege that the District Court erred in increasing the offense levels of
Ronald Hellinger and Weisberg by four levels pursuant to U.S.S.G. § 3B1.1(a).[4] We
have held that because "the question of a defendant's aggravating role . . . is 'essentially
factual,' we will reverse the district court . . . only if its conclusion is clearly erroneous."
*United States v. Ortiz*, 878 F.2d 125, 127 (3d Cir. 1989). Here, the Court did not make
independent factual findings, but instead adopted the findings in Appellants' PSRs.[5] In
such a case, we also apply the clear error standard of review. *See United States v.
Belletiere*, 971 F.2d 961, 969 (3d Cir. 1992). The application of the enhancement is
clearly erroneous "if, after reviewing all of the evidence, we are left with a firm
conviction that a mistake has been made." *Id.*

---

[4] The four-level enhancement was also applied to Donald Hellinger's sentence, but he
does not appeal his sentence on this issue.
[5] Appellants allege that because the Court did not make findings of fact on a contested
issue, we must remand. However, failure to make findings on a contested issue does not
require remand where the findings of fact "are implicit in the record." *United States v.
Gricco*, 277 F.3d 339, 362 (3d Cir. 2002) *overruled on other grounds as stated in United
States v. Cesare*, 581 F.3d 206, 208 n.3 (3d Cir. 2009). Appellants do not dispute that the
District Court adopted the findings from Appellants' PSRs.

Under § 3B1.1(a), a defendant's offense level is increased by four levels if a court finds that the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). If the defendant "was a manager or supervisor" of such a criminal activity, the offense level is increased by three levels. *Id.* § 3B1.1(b). The commentary to this section further requires the defendant to whom an enhancement under § 3B1.1 applies to "have been the organizer, leader, manager, or supervisor of one or more other participants." *Id.* § 3B1.1(a) cmt. n.2.

Appellants do not dispute that the criminal activity involved five or more participants or was otherwise extensive. Instead, they argue that there is no evidence on the record of Weisberg or Ronald Hellinger exercising control over another participant. We disagree. According to the PSRs, Jami Pearlman, one of the Appellants' co-defendants "informed the attorney who PPC hired to research the legality of their gambling payout business that PPC decided not to comply with the legal requirements for money transmitting businesses" and she did so "on behalf of Donald Hellinger, Ronald Hellinger, and Michael Weisberg." Weisberg PSR ¶ 33; Ronald Hellinger PSR ¶ 33.

Appellants alternatively argue that even if an enhancement under § 3B1.1 applies to Weisberg and Ronald Hellinger, it should be the three-level enhancement for managers and supervisors under § 3B1.1(b). The commentary to § 3B1.1 states:

In distinguishing a leadership and organizational role from one of mere management or supervision . . . [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the

6

commission of the offense, the recruitment of accomplices, the claimed
right to a larger share of the fruits of the crime, the degree of participation
in planning or organizing the offense, the nature and scope of the illegal
activity, and the degree of control and authority exercised over others.

§ 3B1.1 cmt. n.4.

The extensive involvement of Weisberg and Ronald Hellinger in PPC's activities supports the four-level enhancement. Weisberg and Ronald Hellinger each owned 22.5% of PPC. Both were PPC account representatives for client companies and received commissions from the activity on these accounts. According to his PSR, Ronald Hellinger "negotiated an agreement between PPC and a trade association for foreign internet gambling companies . . . so that PPC could be introduced to the companies and offer them payment services in the U.S." Ronald Hellinger PSR ¶ 30. Weisberg signed the agreement between PPC and the trade association. Weisberg formed PPC. He, along with a co-defendant, opened several bank accounts into which offshore gambling companies could make deposits and was a signatory on those accounts. He established business agreements and controlled bank accounts into which proceeds of PPC's activities were deposited. On these facts, the District Court did not clearly err in applying the four-level enhancement.

## III.

The District Court did not err in determining that U.S.S.G. § 2S1.3 was the appropriate offense guideline and in applying the leadership enhancement to determine

the sentences of Ronald Hellinger and Weisberg.  We will affirm the judgments of sentence.