NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 17-2954

UNITED STATES OF AMERICA

v.

JOSEPH MEHL
a/k/a
JOSEPH MONTANERO

Joseph Mehl,
                           Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-15-cr-00021-005)
District Judge: Honorable Nitza I. Quinones Alejandro

Submitted Under Third Circuit L.A.R. 34.1(a)
(Submitted: January 18, 2019)

Before: GREENAWAY, JR., SHWARTZ, and PORTER *Circuit Judges*.

(Opinion Filed: August 15, 2019)

OPINION[*]

---

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

This case arises from a drug conspiracy (a "pill mill") in which Appellant Joseph Mehl and others referred illegitimate "pseudo-patients" to a doctor who illegally prescribed opioids for profit. After Mehl entered an open plea of guilty of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, the District Court sentenced him to 180 months' imprisonment, imposed a three-year period of supervised release, and ordered him to pay a special assessment of $100. Mehl challenges the District Court's sentence, arguing that the District Court erred in calculating the drug quantity attributable to him, erred in finding that Mehl was responsible for certain acts that occurred after his alleged withdrawal from the conspiracy in July 2013, and thus imposed a procedurally unreasonable sentence. For the reasons detailed below, we will affirm the District Court's sentence.

I.

Mehl met William O'Brien III, a doctor of osteopathic medicine, after he was involved in an automobile accident in June 2011. Mehl began sending pseudo-patients to O'Brien for prescriptions of controlled substances. From March 2012 through January 2015, O'Brien sold medically unnecessary prescriptions for medications—including oxycodone, methadone, and Xanax—to pseudo-patients with the help of Mehl and the other co-conspirators. O'Brien also provided prescriptions for narcotics to drug traffickers, many of whom were members of the Pagans Motorcycle Club of Philadelphia ("Pagans"). Sam Nocille, president of the Pagans, devised a scheme whereby members

2

of the gang would fill the prescriptions supplied by O'Brien, and sell them on the street for cash. Nocille received a kickback from the proceeds of the sale of the illegally obtained drugs until his death in January 2014.

The parties contest the extent of Mehl's involvement in the pill mill. According to the Government, Mehl's role was to recruit pseudo-patients, accompany them to the pharmacy to fill their prescriptions, help collect payments from the illegal sale of those prescriptions, and pay a portion of the proceeds to Nocille. The Government argues that Mehl brought in a pseudo-patient group consisting of several individuals, including his wife, ex-wife, and brother-in-law, each of whom procured medically unnecessary prescriptions from O'Brien. The parties agree that in the early stages of the conspiracy, Mehl facilitated the introduction of members of the Pagans to O'Brien, but Mehl argues that his role in the conspiracy was only marginal. In total, Mehl was found responsible for the marijuana equivalent of 15,383.53 kilograms of controlled substances.

On July 14, 2015, Mehl and eight codefendants (including O'Brien) were charged with conspiracy to distribute Schedule II controlled substances, in violation of 21 U.S.C. § 846 (Count Two). On April 14, 2016, Mehl entered an open guilty plea in the United States District Court for the Eastern District of Pennsylvania to the Count Two conspiracy charge. The District Court sentenced Mehl to 180 months' imprisonment, three years of supervised release, and ordered him to pay a special assessment of $100.

II.[1]

Mehl argues that the District Court's sentence was procedurally unreasonable on three grounds. First, according to Mehl, the District Court miscalculated the drug quantity attributable to him for sentencing purposes; therefore, his base offense level of 34, his final adjusted offense level of 37, and his advisory Sentencing Guideline range of 262-327 months of incarceration were incorrect.[2] Second, Mehl argues that the District Court erred in finding that Mehl was responsible for certain acts that occurred after his alleged withdrawal from the conspiracy in July 2013. Third, Mehl asserts that the District Court failed to consider the nature and circumstances of his offense as required by 18 U.S.C. § 3553(a)(1).

We review a district court's "application of the Guidelines to the facts for abuse of discretion and its factual findings for clear error." *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009) (internal quotation marks and citations omitted). "The Sentencing Guidelines are now advisory, but a sentence will be found procedurally unreasonable when a district court fails to calculate accurately the sentencing range suggested by the Guidelines." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 49-50 (2007)). "The party challenging the sentence bears the ultimate burden of proving its

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] Because the statutory maximum term of imprisonment for Mehl's offense was twenty years, however, the recommended Guidelines sentence was capped at 240 months.

unreasonableness, and we accord great deference to a district court's choice of final sentence." *United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007) (internal citations omitted).

Under the Guidelines, relevant conduct in a conspiracy includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(A), (a)(1)(B). As the commentary to § 1B1.3 explains, a person convicted of conspiracy to distribute controlled substances "is accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *United States v. Iglesias*, 535 F.3d 150, 160 (3d Cir. 2008) (omission in original) (emphasis omitted) (quoting U.S.S.G. § 1B1.3 cmt. n.2). However, "when a defendant is convicted of drug distribution, ordinarily a district court should exclude from the total drug quantity any amount possessed for his personal consumption." *Id.* (citing *Jansen v. United States*, 369 F.3d 237, 249 (3d Cir. 2004)).

According to Mehl, the District Court erroneously determined that he was responsible for the prescriptions of patients without sufficient material evidence to support such a finding. We disagree. The District Court made the specific finding that Mehl brought several different categories of individuals into the conspiracy, each of whom contributed to the use or sale of illegal substances. To support this finding, the

5

District Court relied on Mehl's own post-arrest admissions to the authorities, patient charts seized from O'Brien's office, testimony from several witnesses, and a list of recruited patients offered by a former pill mill employee. Furthermore, the District Court attributed 50% of the oxycodone 30 mg pills to Mehl's personal use, illustrating that it accepted—albeit in part—Mehl's argument that he struggled with substance abuse and had nerve damage, and obtained pills from O'Brien for personal use. *See United States v. Miele*, 989 F.2d 659, 665-66 (3d Cir. 1993) ("Where there is other evidence to support the higher end of an estimated range, the court may certainly rely on the higher estimate."). The quantity of drugs that the District Court attributed to Mehl was reasonable and supported by the record. Therefore, the District Court's calculation of Mehl's offense level under the advisory Sentencing Guidelines was not erroneous.

Mehl also argues that the District Court erred by declining to conclude that Mehl withdrew from the conspiracy in July 2013. To establish withdrawal, Mehl "must present evidence of some affirmative act of withdrawal on his part, typically either a full confession to the authorities or communication to his co-conspirators that he has abandoned the enterprise and its goals." *United States v. Steele*, 685 F.2d 793, 803-04 (3d Cir. 1982) (citations omitted). Mehl did not present this evidence. Instead, he contends that the purpose of the conspiracy was for him to obtain pills to support his addiction, and since the record suggests that he stopped receiving pills in July 2013, the record also supports his argument that he withdrew from the conspiracy in July 2013. Mehl's characterization overlooks evidence in the record, which shows that the pill mill

conspiracy in which he was involved was much larger than a simple exchange between Mehl and O'Brien for prescription substances. The District Court found, based on evidence in the record, that Mehl was responsible for bringing several individuals into the pill mill conspiracy—individuals who continued to receive pills and sell them well after July 2013. Evidence in the record also supports the District Court's finding that Mehl offered to help Nocille collect on proceeds from the scheme in January 2014. Taken together, the record does not support Mehl's argument that the District Court erred in attributing drugs that were obtained and sold after his alleged withdrawal.

Mehl's argument that the District Court failed to properly to consider the § 3553(a)(1) factors is similarly unconvincing. "Ultimately, '[t]he touchstone of "reasonableness" is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).'" *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)). During the sentencing hearing, the District Court expressly took the § 3553(a) sentencing factors into consideration. Under the Sentencing Guidelines, Mehl was eligible for 240 months' imprisonment; however, based on "the arguments for a variance, . . . [Mehl's] own allocution, [and] the relevant [§] 3553(a) factors," the District Court sentenced Mehl to a term of 180 months' imprisonment. SA 240. It is manifest that the District Court considered the relevant sentencing factors, therefore Mehl's argument is without merit.

### III.

For the foregoing reasons, we will affirm the District Court's sentence.